O

# United States District Court
# Central District of California

WESTERN VEG-PRODUCE, INC., a California corporation,

    Plaintiff,

v.

THE LEXY GROUP, a California corporation d/b/a WEST COAST FRESH; JUAN M. CARDENAS, an individual,

    Defendants.

Case No. 2:18-cv-00180-ODW (AGRx)

**ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [15]**

## I. INTRODUCTION

Plaintiff Western Veg-Produce, Inc. ("Plaintiff") brings this action against The Lexy Group, d/b/a West Coast Fresh, ("Fresh") and Juan M. Cardenas ("Cardenas") (collectively, "Defendants") to enforce Plaintiff's trust rights under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499(e). (*See* Compl., ECF No. 1.) Plaintiff alleges eight causes of action that seek to collect PACA trust assets, interest thereon, costs, attorneys' fees, and to enforce a Reparation Award by the U.S. Department of Agriculture. (*See id.*) Defendants failed to respond to the Complaint, and the Clerk entered default on February 14, 2018. (ECF No. 14.) Plaintiff now moves

for entry of default judgment. (ECF No. 15.) For the reasons discussed below, the Court **GRANTS** the Motion, in part.[1] (*Id.*)

## II. BACKGROUND

### A. Factual Background

Plaintiff agreed to sell and deliver, and Defendants agreed to buy, various quantities of strawberries. (*See* Compl.) Plaintiff is subject to, and licensed under PACA, as a dealer and commission merchant. (*Id.* ¶ 9.) As a result, Plaintiff is engaged in the business of selling and shipping wholesale quantities of perishable agricultural commodities. (*Id.* ¶ 13.) Plaintiff alleges that Fresh also handled produce in interstate and/or foreign commerce and operated under a PACA license as a commission merchant, dealer, and/or retailer in wholesale quantities. (*Id.* ¶ 11.)

Plaintiff alleges that between March 30, 2013, and June 6, 2013, the parties engaged in a series of transactions in which Plaintiff sold and shipped various quantities of strawberries to Fresh at its request. (*Id.* ¶ 13.) Fresh agreed to pay Plaintiff the total principal amount of $58,026.80. (*Id.*) Plaintiff forwarded Defendants the invoices for each transaction, which confirmed each sale and set forth in detail the amounts owed. (*Id.* ¶ 14.) Defendants have failed to pay for the produce delivered, despite repeated demands. (*Id.* ¶ 15.)

Cardenas is an officer, director, shareholder, member, and/or manager of Fresh. (*Id.* ¶ 6.) Plaintiff alleges that Cardenas was an insider with actual and constructive knowledge of the PACA trust and was in "a position to control the PACA trust assets which are the subject of this lawsuit." (*Id.* ¶¶ 7–8.) Cardenas allegedly breached his duties as a PACA trustee by failing to preserve and maintain sufficient PACA trust assets to pay Plaintiff for the produce. (*Id.* ¶¶ 46–47.)

---

[1] Having carefully considered the papers filed in support of the instant Motion, and Plaintiff's Notice of Waiver of Oral Argument (ECF No. 19), the Court deems the matter appropriate for decision without oral argument, and **VACATES** the hearing set for April 23, 2018. Fed. R. Civ. P. 78; L.R. 7-15.

Plaintiff then filed a complaint against Defendants before the U.S. Secretary of Agriculture, and, on January 8, 2015, the Secretary issued a Reparation Award granting Plaintiff reparations of $42,732.00, plus interest, and $500.00 in costs.[2] (*Id.* ¶¶ 18–19, Ex. 2.) Defendants have failed to make any payment under the Reparation Award and the full balance remains due and owing. (*Id.* ¶¶ 20–22.)

**B.     Procedural Background**

On January 8, 2018, Plaintiff initiated this action, alleging eight causes of action: (1) enforcement of the Reparation Award issued by the U.S. Secretary of Agriculture; (2) breach of contract; (3) enforcement of statutory PACA trust provisions; (4) violations of PACA: failure to account and pay promptly; (5) breach of fiduciary duty by statutory PACA trustee; (6) declaratory relief; (7) defalcation; and (8) false pretenses. (*Id.* ¶¶ 17–87.)

As set forth above, Defendants defaulted, and Plaintiff now seeks a default judgment.

### III.     LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55(a), as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading entering default; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 55(b)(2) authorizes district courts discretion to grant default judgment after the Clerk enters default under Rule 55(a). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When moving for a default judgment, the

---

[2] Although Plaintiff's administrative complaint requested $58,026.80, the Secretary awarded Plaintiff only $42,732.00 in its Reparation Award because of jurisdictional issues, as two of Plaintiff's transactions were not timely filed. (Compl., Ex. 2 at 6–7.)

well-pleaded factual allegations in the complaint are accepted as true, with the exception that allegations as to the amount of damages must be proved. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

In exercising its discretion, the Court considers the *Eitel* factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for the entry of a default judgment against Defendants. The Clerk entered a default against Defendants on February 14, 2018. (ECF No. 14.) Plaintiff's counsel declares: (1) Defendants are not infants or incompetent persons; (2) Defendants are not covered under the Servicemembers Civil Relief Act; and (3) Defendants were served with the Motion for Default Judgment. (Decl. of June Monroe ("Monroe Decl.") ¶ 15, Ex. 2, ECF No. 17; Mot. 13, ECF No. 15-1.) Plaintiff has therefore complied with the Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1.

### B. *Eitel* Factors

The *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

#### 1. Plaintiff Would Suffer Prejudice

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177

(C.D. Cal. 2002). Defendants have failed to participate in this action, and without a default judgment, Plaintiff will be unable to collect its trust assets from Defendants and will have no other recourse for recovery. *See Superior Sales W., Inc. v. Revival Enterprises, Inc.*, No. SACV-13-352-JST (JPRx), 2013 WL 12136966, at *2 (C.D. Cal. June 18, 2013) (quoting 7 U.S.C. § 499b(4)) ("PACA is the vehicle Congress has provided for wholesale merchants to obtain 'full payment promptly.'"). Accordingly, this factor favors entry of default judgment.

### 2. Plaintiff Brought Meritorious Claims and Plaintiff's Complaint Was Sufficiently Pleaded in Part

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'" *PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Plaintiff asserts eight causes of action against Defendants: (1) enforcement of the Reparation Award issued by the U.S. Secretary of Agriculture; (2) breach of contract; (3) enforcement of statutory PACA trust provisions; (4) violations of PACA: failure to account and pay promptly; (5) breach of fiduciary duty by statutory PACA trustee; (6) declaratory relief; (7) defalcation; and (8) false pretenses. (*See* Compl. ¶¶ 17–87.) Seemingly, however, Plaintiff only moves for default judgment as to its PACA-derivative claims, and does not address its remaining claims for breach of contract, defalcation, or false pretenses. (Mot. 3–7.) Therefore, the Court first addresses the claims set forth in Plaintiff's Motion, and then addresses the remaining claims.

#### a. Violation of PACA and The Enforcement of PACA Trust Provisions

> To recover the proceeds from a PACA created trust, a plaintiff must demonstrate: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by

> giving written notice to the purchaser within the time provided by the law.

*Superior Sales W., Inc.*, 2013 WL 12136966, at *2 (citing *A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005)).

Here, Plaintiff has sufficiently alleged each of these elements in its Complaint. First, Plaintiff properly pleads that, in a series of transactions, Plaintiff sold and shipped perishable agricultural commodities to Fresh. (Compl. ¶¶ 12–13.) Second, Plaintiff alleges that Fresh was engaged in the handling of produce as a commission merchant, dealer, and/or retailer. (*Id.* ¶ 12.) Third, Plaintiff alleges that the produce was purchased and sold in, or in contemplation of, the course of interstate and/or foreign commerce. (*Id.* ¶ 32.) Fourth, Plaintiff pleads that Fresh has failed and refused to fully pay Plaintiff for the produce purchased under each invoice. (*Id.* ¶ 15.) Lastly, Plaintiff alleges that on the date of each transaction, it forwarded to Fresh invoices containing all language necessary to preserve Plaintiff's PACA trust rights. (*Id.* ¶ 14, Ex. 1.) Specifically, each invoice contained the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. [§] 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(*Id.*) Therefore, Plaintiff preserved its rights to the trust by including statutory language in its invoices.

Pursuant to 7 U.S.C. § 499e(c), Plaintiff became a beneficiary of a statutory trust on all of Fresh's perishable agricultural commodities, all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products. *See Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("The trust automatically arises in favor of a perishable agricultural commodities seller upon

delivery of perishable agricultural commodities and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing in connection with the transaction have been received."). Plaintiff alleges that Defendants have failed to maintain the trust assets, as required under PACA, because Defendants transferred or diverted the trust assets—namely receivables or proceeds derived from Defendants' sale of produce—to their own use and/or to unknown third parties. (Compl. ¶¶ 35–36, 39.)

Additionally, under PACA, any findings or orders of the U.S. Secretary of Agriculture in a reparation award "shall be prima-facie evidence of the facts therein stated." 7 U.S.C. § 499g(b). In its Reparation Award, discussed more fully below, the Secretary found that Defendants were in violation of PACA and were, thus, liable for the unpaid produce. (Compl. ¶ 19, Ex. 2.) In light of the considerations above, Plaintiff has sufficiently pleaded meritorious claims against Defendants for the violation of PACA and the failure to comply with statutory PACA trust provisions. The Court will address the correct calculation of the alleged damages in depth below. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default[,] the factual allegations in the complaint, except those relating to the amount of damages, will be taken as true.").

### b. Liability of Juan M. Cardenas

"[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997). Here, Plaintiff alleges that Cardenas was, at the relevant times, a controlling officer, director, shareholder, and/or owner of the Fresh and, in that capacity, controlled the disposition of Fresh's assets. (Compl. ¶¶ 7–8, 42–43, 45.) Plaintiff further alleges that Cardenas had a duty to ensure that he and Fresh complied with PACA and fulfilled their duties as PACA trustees. (*Id.* ¶ 43.) Plaintiff

alleges that Cardenas had full knowledge and responsibility for dealing with Fresh's obligations. (*Id.* ¶¶ 44–45.)

Therefore, the Court finds that Cardenas was in a position to control the PACA assets. As such, Cardenas may be held personally liable for Fresh's failure to preserve Plaintiff's trust assets. *See Superior Sales W., Inc.*, 2013 WL 12136966, at *3 (finding individual defendants personally liable under PACA because they were in positions of control over Plaintiff's trust assets). Accordingly, Plaintiff has sufficiently pleaded a meritorious claim against Cardenas for breach of fiduciary duty.

### c. Enforcement of Reparation Award

Under 7 U.S.C. § 449g(b), an individual maintains a cause of action in federal court for the enforcement of reparations awards issued by the U.S. Secretary of Agriculture, pursuant to PACA. *Id.* at *2.

On January 8, 2015, the Secretary issued a Reparation Award in favor of Plaintiff and against Fresh. (Compl. ¶ 19, Ex. 2.) In it, the Secretary found Fresh liable for $42,732.00, at an interest rate of 18% per annum from the date each obligation became due through January 8, 2015, plus post-decision interest at 0.25% per annum, and $500.00 in costs. (*Id.*) The transactions at issue in Plaintiff's administrative complaint are the same transactions at issue in Plaintiff's current Complaint. (*Id.* ¶ 18.)

Fresh's full payment was to be made on or before February 7, 2015, and Plaintiff alleges that Fresh has failed to pay any portion of the Reparation Award or file an appeal. (*Id.* ¶¶ 20–22.) Plaintiff further alleges that as a result of Fresh's failure to pay amounts awarded, Plaintiff has suffered losses in the principal amount of $42,732.00, plus post-decision interest and attorneys' fees incurred through litigation. (*Id.* ¶ 24.) Therefore, Plaintiff has sufficiently pleaded a meritorious claim against Fresh for the enforcement of the Reparation Award issued by the U.S. Secretary of Agriculture.

### d. Declaratory Relief

In addition to monetary damages, Plaintiff seeks a declaratory judgment establishing that:

(1) the trust funds at issue never became the property of Defendants or the estate of Defendants under 11 U.S.C. § 541;

(2) the Plaintiff's trust claims under PACA are superior to and take priority over Defendants' secured and unsecured claims, if any, to Defendants' accounts receivable inventory and the proceeds thereof; and

(3) only funds in excess of the trust funds necessary to pay the PACA trust claimants are property of Defendants or the estate of Defendants, possibly subject to a third party's lien or claims, if such are established.

(Compl. ¶ 52.) Plaintiff alleges that it seeks this relief in order to preserve its trust assets, as an actual controversy has arisen relating to the rights and duties of each party. (*Id.* ¶ 50.)

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also* Fed. R. Civ. P. 57. "Although declaratory relief is an equitable remedy[,] the grant of which is discretionary, . . . courts liberally grant such relief when it will 'serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Pratt v. Wilson*, 770 F. Supp. 539, 545 (E.D. Cal. 1991) (quoting *Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C. Cir. 1983)).

It is well settled that, "[a]s beneficiaries of a PACA trust, growers and sellers of perishable agricultural commodities . . . retain the 'right to recover against [PACA trustees] superior to all creditors, including secured creditors.'" *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir. 2005) (quoting *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995)). As discussed above, Plaintiff has sufficiently pleaded its rights as a beneficiary of a PACA trust. As such, Plaintiff's rights to the PACA trust are, as a matter of law,

superior to those of Defendants, and Plaintiff is entitled to the declaratory relief sought. *See Am. Fruit & Vegetable Co. v. Ithaca Produce, Inc.*, 848 F. Supp. 2d 375, 377 (W.D.N.Y. 2011) ("[P]laintiff has demonstrated entitlement to the declaratory judgment it seeks, . . . [and] plaintiff's rights to [the real property at issue], if any, are superior to those of the defaulting defendants, in light of plaintiff's status as a PACA trust beneficiary."); *see also In re Quality Sales, LLC*, No. 12–20008, 2013 WL 4482412, at *1 (Bankr. D. Conn. Aug. 19, 2013) ("Because [PACA trust] property is held in trust, it is excluded from the property of the [PACA] Debtor's bankruptcy estate, making it unavailable for distribution to non-PACA claimants.") (citing 11 U.S.C. § 541(d)). Accordingly, Plaintiff has sufficiently pleaded a meritorious claim for declaratory judgment against Defendants.

### e. Remaining Non-PACA Claims

Plaintiff also brings claims against Defendants for breach of contract, defalcation, and false pretense. (*See* Compl.) After careful consideration, the Court finds that each of the remaining claims either seek duplicative relief or are barred by the statute of limitations, and sua sponte dismisses them.

First, Plaintiff seeks identical relief under its defalcation and false pretense causes of action. (*See id.* at 26–27.) "A court may dismiss duplicative claims in its discretion." *DTCC Data Repository (U.S.) LLC v. U. S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 18 (D.D.C. 2014); *see Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the suit."). Claims are duplicative when they "stem from identical allegations, that are decided under identical legal standards, and for which *identical relief* is available." *Wultz*, 755 F. Supp. 2d at 81 (emphasis added); *see also C & K NuCo, LLC v. Expedited Freightways, LLC*, No. 13 C 4006, 2014 WL 4913446, at *12 (N.D. Ill. Sept. 30, 2014) ("The court has discretion to dismiss duplicative claims where they allege the same facts and the same injury.").

Here, the relief sought by Plaintiff for each cause of action is duplicitous, with the exception of Plaintiff's breach of contract claim, which the Court discusses below. Each cause of action requests $42,732.00 from Defendants, plus interest, attorneys' fees, and costs. (*See* Compl. at 23–27.) The Court has already granted Plaintiff this relief pursuant to Plaintiff's PACA-derivative causes of action. Thus, the Court **DISMISSES, with prejudice,** Plaintiff's defalcation and false pretense claims.

Next, the Court dismisses Plaintiff's breach of contract claim because it falls outside the statute of limitations. A district court may dismiss sua sponte under Federal Rule of Civil Procedure 12(b)(6), where the claimant cannot possibly obtain relief. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). In California, a breach of contract claim is subject to a four-year statute of limitations. Cal. Code. Civ. Proc. § 337; *see Cheak v. Long Beach Unified Sch. Dist.*, No. CV 05-05642 DDP (JTLx), 2005 WL 8156583, at *3 (C.D. Cal. Sept. 20, 2005). Here, the invoices supporting the formation of each contract are dated 2013. (Compl., Ex. 1.) Plaintiff filed this action on January 8, 2018, and thus, Plaintiff's breach of contract claim is barred by the statute of limitations. Accordingly, the Court **DISMISSES it with prejudice.**

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

The sum at stake does not preclude entry of default judgment. Plaintiff seeks to recover against Defendants, jointly and severally, $85,409.85, plus post-judgment interest. (Monroe Decl. ¶ 17.) This amount consists of $42,732.00 in unpaid trust assets, $37,071.70 in pre-judgment interest through March 21, 2018, $4,792.15 in

attorneys' fees, and $814.00 in costs. (*Id.*) Plaintiff has presented sufficient evidence that the amount it seeks is legitimate because the alleged damages are consistent with the terms of the Reparation Award and are supported by verifiable invoices and a well-documented schedule of accrued interest. (*See* Compl., Ex 1–2; Monroe Decl., Ex. 1.) Therefore, the amount at stake is reasonably proportionate to the harm caused by Defendants' failure to pay for the produce they received. *See Superior Sales W., Inc.*, 2013 WL 12136966, at *2 (finding that $61,062.32 in total damages was proportional to the seriousness of defendants' PACA violation). Accordingly, this factor favors entry of default judgment.

### 4. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177. The general rule is that a defaulting party admits the facts alleged in the complaint to be taken as true. *Geddes*, 559 F.2d at 560. As discussed, Plaintiff has adequately alleged the facts necessary to establish certain claims in the Complaint, and Defendants have not challenged the validity of Plaintiff's allegations because Defendants have failed to answer. (*See* ECF No. 14.) The facts pleaded are also supported by documentary evidence, which supports the conclusion that there is no dispute as to material facts. (Compl., Ex. 1–2.) Therefore, the Court finds that this factor weighs in favor of default judgment.

### 5. Defendants' Default Was Not Due to Excusable Neglect

There is little possibility of excusable neglect and default judgment is favored when defendants fail to respond after being properly served. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Here, Plaintiff served Defendants with the Complaint on January 17, 2018. (ECF Nos. 10–11.) Plaintiff served Defendants the present Motion on March 21, 2018. (Mot. 13.) Plaintiff also repeatedly advised Defendants, by written correspondence and telephone calls, to pay the amounts due under the invoices. (Decl. of David Oliver ("Oliver Decl.") ¶ 6, ECF No. 16.) Despite receiving notice of this action on several occasions, Defendants have

not participated in any meaningful way. Because Defendants have made no showing of excusable neglect, the sixth *Eitel* factor also favors entry of a default judgment.

### 6. Decision on the Merits

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where, as here, Defendants fail to answer the Plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendants failed to respond to Plaintiff's Complaint, the Court finds that the seventh *Eitel* factor does not preclude entry of a default judgment.

## C. Damages

Pursuant to the trust provisions of PACA, Plaintiff requests $42,732.00 in unpaid trust assets, $37,071.70 in pre-judgment interest, $4,792.15 in attorneys' fees, and $814.00 in costs, plus post-judgment interest at a rate of 18% per annum. (Mot. 8–9; Monroe Decl. ¶ 17.) The Court will address each in turn.

### 1. Unpaid Trust Assets

Plaintiff seeks $42,732.00 in unpaid trust assets for the produce sold and delivered to Defendants. (Monroe Decl. ¶ 17.) Under PACA, a dealer who violates its provisions "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff has supplied evidence establishing that $42,732.00 in damages is warranted, based on the invoices attached to the Complaint and David M. Olivier's sworn declaration. (Compl., Ex. 1; Olivier Decl., Ex. 1); *see Progressive Produce Corp. v. Wild W. Produce, LLC*, No. CV 13-00665 RSWL, 2013 WL 1935921, at *2 (C.D. Cal. May 9, 2013) (finding that the plaintiff's principal damages were sufficiently established because the plaintiff proffered a declaration and the relevant invoices). These invoices contain the statutory language necessary to preserve Plaintiff's PACA rights to collect the unpaid balance on its shipments. (*See* Compl., Ex. 1; Olivier Decl., Ex. 1.) Moreover, the U.S. Secretary of Agriculture's Reparation Award supports the

finding that Defendants owe Plaintiff $42,732.00 for the unpaid commodities. (Compl., Ex. 2.) Therefore, the Court awards Plaintiff unpaid trust assets in the amount requested.

### 2. Pre-Judgment Interest and Finance Charges

Plaintiff also seeks $37,071.70 in pre-judgment interest and finance charges through March 18, 2018. (Mot. 8–9; Monroe Decl. ¶¶ 8–9.) "[P]rejudgment interest may be included in a PACA trust claim if supported by a contractual right; alternatively, the Court has discretion to award reasonable prejudgment interest if such an award promotes the interests of PACA claimants." *Family Tree Produce, Inc. v. Bautista*, No. SA CV 13-00364-DOC (MLGx), 2013 WL 6733576, at *5 (C.D. Cal. Dec. 13, 2013) (citing *Middle Mountain Land & Produce Inc.*, 307 F.3d at 1225).

Here, Plaintiff's invoices contain written provisions that provide for the recovery of finance charges on all delinquent sums at a rate of 1.5% per month (18% per annum) from the date each payment obligation first became due. (Olivier Decl. ¶ 15, Ex. 1.) These invoices confirm Plaintiff's sale to Defendants and state: "A monthly finance charge of 1 1/2% will be assessed on invoices not receipted within the stated terms." (*Id.*) Therefore, Plaintiff is entitled to contractual charges at the rate of 1.5% per month based on the language written on the invoice. *See Progressive Produce Corp.*, 2013 WL 1935921, at *2 (awarding a pre-judgment interest rate of 18% because the terms in the invoice for the sale of goods were included in the parties' contract).

Plaintiff's amortization schedule confirms that the requested interest rate on the unpaid invoices in this case yields a total of $37,071.70 in pre-judgment interest through March 18, 2018. (*See* Monroe Decl. ¶¶ 8–9, Ex. 1.) Accordingly, the Court awards Plaintiff pre-judgment interest of $37,071.70 through March 18, 2018, and continuing until judgment is entered at the daily rate of $21.07. (*See id.* ¶ 8.)

### 3. Attorneys' Fees

Next, Plaintiff requests $4,792.15 in attorneys' fees. (Mot. 9; Monroe Decl. ¶ 10.) When a party seeks attorneys' fees, the award is subject to the constraints

outlined in Local Rule 55-3. If an applicable statute provides for the recovery of attorneys' fees and the total monetary judgment in the case is between $50,000 and $100,000, the court must set attorneys' fees at $3,600 plus 4% of the amount over $50,000 that is awarded. L.R. 55-3. Because PACA provides for the recovery of attorneys' fees, the Court will award such fees in accordance with the Local Rules. *See* U.S.C. § 499g(b) (stating that a prevailing party that seeks to enforce a Reparation Award under PACA is entitled to "reasonable attorneys' fees, to be taxed and collected as a part of the costs of the suit"). Additionally, each invoice issued by Plaintiff contains a provision that provides for the recovery of attorneys' fees in the event of any legal action to collect the amounts due. (Olivier Decl., Ex. 1.)

Here, the total judgment sought by Plaintiff, exclusive of attorneys' fees and costs, is $79,803.70, as of March 21, 2018. (Monroe Decl. ¶¶ 10–11.) This total consists of $42,732.00 in unpaid trust assets and $37,071.70 in pre-judgment interest. According to the Rule 55-3 schedule, Plaintiff is entitled to $3,600 plus $1,192.15, which is 4% of the award over the $50,000 threshold. Therefore, the Court awards Plaintiff $4,792.15 in attorneys' fees. *See Vogel*, 992 F. Supp. 2d at 1016 (applying Rule 55-3 schedule to award fees in a default judgment context).

### 4. Costs

Plaintiff requests $814.00 in costs incurred pursuing this action, which includes the $400.00 filing fee and $414.00 in process server fees. (Monroe Decl. ¶ 11; ECF Nos. 1, 10–11.) Plaintiff's filing fees and fees for service of process are supported by the record and are, therefore, recoverable. *See Family Tree Produce, Inc.*, 2013 WL 6733576, at *6; *Superior Sales W., Inc.*, 2013 WL 12136966, at *4. Thus, Plaintiff may file a Notice of Application to the Clerk to Tax Costs after the Court enters judgment. *See* C.D. Cal. L.R. 54-2, 54-3.1, 54-3.2.

### 5. Post-Judgment Interest

Finally, Plaintiff seeks post-judgment interest from the date of judgment at a rate of 18% per annum on all unpaid principal sums due until fully paid. (Monroe Decl.

¶ 17.)  Pursuant to 28 U.S.C. § 1961(a), post-judgment interest is appropriate on any money judgment in a civil case recovered in a district Court.  *See Trustees of Operating Eng'rs Pension v. Joel Silverman & Assocs., Inc.*, No. CV 08-5410 GAF (CTx), 2009 WL 10670632, at *6 (C.D. Cal. Jan. 30, 2009).  However, "[p]ost-judgment interest is generally governed by 28 U.S.C. § 1961, which mandates the awarding of post-judgment interest according to the federal rate." *Progressive Produce Corp.*, 2013 WL 1935921, at *2.  The federal post-judgment interest rate is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

The cases that Plaintiff cites in support of its argument for an interest rate outside the federal mandate provide only that courts have discretion to determine *pre-judgment* interests rates in PACA claims.  *See Columbia Brick Works, Inc. v. Royal Ins. Co. of Am.*, 768 F.2d 1066, 1071 (9th Cir. 1985); *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 871–72 (9th Cir. 2001); *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1130–31 (N.D. Cal. 2010); *Delta Pre-Pack Co. v. Gitmed*, 2009 U.S. Dist. LEXIS 89727, at *3 (E.D. Cal. 2009).  In fact, another district court in this Circuit rejected a similar argument for post-judgment interest—made by the same firm and citing the same case law—in *Golden W. Veg, Inc. v. Bartley*, No. 16-CV-03718-LHK, 2017 WL 2335602, at *9 (N.D. Cal. May 30, 2017).  The court in *Golden* held that the "[p]laintiff ha[d] cited no authority for the proposition that courts have discretion to change the *post-judgment* interest rate dictated by 28 U.S.C. § 1961." *Id.*

Plaintiff does not have a contractual right to post-judgment interest at 18% per annum nor does it provide sufficient evidence to support its requested rate.  Therefore, the Court declines to award Plaintiff post-judgment at 18% per annum.  *See Progressive Produce Corp.*, 2013 WL 1935921, at *2 ("Because Plaintiff has not set forth sufficient evidence to support its request for post-judgment interest at the rate of 18% per annum, Plaintiff is only entitled to post-judgment interest calculated at the federal rate pursuant

to Section 1961."); *Family Tree Produce, Inc.*, 2013 WL 6733576, at *7 (finding that because Plaintiff does not have a contractual right to post-judgment finance charges, the federal interest rate should be used). Accordingly, the Court awards Plaintiff post-judgment interest at the rate set forth in U.S.C. § 1961(a).

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS, IN PART,** Plaintiff's Motion for Entry of Final Default Judgment. (ECF No. 15.) The Court **DISMISSES**, with prejudice, Plaintiffs' claims for breach of contract, defalcation, and false pretense.

Plaintiff is entitled to recover **$85,409.85** from Defendants, plus post-judgment interest at a rate established by U.S.C. § 1961, consisting of:

- $42,732.00 in unpaid trust assets;
- $37,071.70 in pre-judgment interest on the unpaid invoices;
- $4,792.15 in attorneys' fees; and
- $814.00 in costs.

Upon entry of judgment, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

April 16, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**